UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALLAN J. KOLLAR,

           Plaintiff,

   v.

BANK OF AMERICA, a Delaware corporation;
JOHN M. ALBERT and JANE DOE ALBERT,
Washington residents; and DOES 1–20,

           Defendants.

CASE NO. C08-1563-JCC

ORDER

This matter comes before the Court on Plaintiff Allan J. Kollar's Motion to Remand for lack of subject matter jurisdiction (Dkt. No. 12), Defendants' Response in opposition (Dkt. No. 18), and Plaintiff's Reply (Dkt. No. 22). The Court has carefully considered these documents and their supporting declarations and exhibits, as well as the balance of pertinent materials in the case file, and has determined that oral argument is not necessary. The Court hereby finds and rules as follows.

**I.    BACKGROUND**

In 2004, Defendant John Albert, a Bank of America employee and insurance agent for The Hartford Company, sold Plaintiff a life insurance policy as part of a § 412(i) retirement plan.[1] (Compl. ¶

---

[1] Plaintiff describes a § 412(i) plan as follows:

ORDER – 1

3.3 (Dkt. No. 1-2 at 4).) Plaintiff is "a former artist and public school art teacher who became an art dealer" and who professes not to be a sophisticated business person with knowledge about pension plans or insurance. (Kollar Decl. ¶ 2 (Dkt. No. 13).) Plaintiff was a customer of Bank of America "since before February 13, 2004, and Mr. Albert has been his personal banker throughout that period." (Compl. ¶ 3.3 (Dkt. No. 1-2 at 4).) Allegedly, Plaintiff had no interest in life insurance and did not initiate any efforts to create a § 412(i) retirement plan. (*Id.*; Kollar Decl. ¶ 4 (Dkt. No. 13).) According to Plaintiff, Mr. Albert and a representative from The Hartford Company, Mr. McGill, visited Plaintiff at his home and told him that he should purchase a § 412(i) plan so as to achieve substantial tax savings in a "very safe, very legal" way. (Kollar Decl. ¶ 5 (Dkt. No. 13).) The insurance plan required Plaintiff to pay annual premiums of $84,444, but Mr. Albert allegedly told him that his premiums would be tax deductible. (Compl. ¶¶ 3.3–3.4 (Dkt. No. 1-2 at 4).) Despite the alleged fact that Mr. Albert told Plaintiff that only one substantial commission would be taken in the first year, approximately $70,000 of each of his premium payments for 2004 and 2005 went to Mr. Albert as commissions. (*Id.* ¶ 3.5; Attachment to Form 8886 (Dkt. No. 23-2 at 2–3).) Plaintiff was audited by the Internal Revenue Service ("IRS") in October 2006, after which the IRS informed him that the plan was not in compliance with the Internal Revenue Code § 412(i) and that Plaintiff was now liable for a $100,000 fine for each of the tax years

---

> A Section 412(i) plan is a tax-qualified retirement plan funded exclusively by individual life insurance contracts, such as policies or annuities. To create a 412(i) plan, an employer establishes a trust to hold the plan's assets. The employer makes cash contributions to the trust and those contributions are used to pay premiums on an insurance policy and/or annuity covering an employee. The employer claims a tax deduction for the contribution to the plan. At a later date, typically the employee's retirement, the plan sells the insurance policy to the employee for the policy's surrender value (the present cash value of the policy reduced by the surrender charge) and uses the proceeds to purchase an annuity to pay the employee's retirement benefits.

(Compl. ¶ 3.1 (Dkt. No. 1-2 at 3).) Allegedly, the IRS has targeted abusive 412(i) plans, which "are typically characterized by a steep surrender charge, designed to permit an inexpensive transfer to the employee of the insurance policy upon his retirement. The surrender charge decreases thereafter, causing the value of the policy to skyrocket." (*Id.* ¶ 3.2.)

ORDER – 2

2004, 2005, and 2006 and a 10 percent excise tax on nondeductible contributions. (Compl. ¶ 3.7 (Dkt. No. 1-2 at 5)).

On September 19, 2008, Plaintiff filed a Complaint against Bank of America, Mr. Albert, and others for money damages, consumer protection violations, and injunctive relief in King County Superior Court. (Compl. (Dkt. No. 1-2 at 2).) In the Complaint, Plaintiff brought claims on his own behalf and also sought to certify a state-wide class on grounds that Defendants engaged in a civil conspiracy "related to the design, marketing, and sale of life insurance policies for defined benefit pension plans seemingly in compliance with Section 412(i)" of the Internal Revenue Code. (*Id.* ¶ 5.2.) In addition, Plaintiff brought claims against Defendants for violation of the Washington Consumer Protection Act, constructive fraud, negligence, and unjust enrichment. (*Id.* ¶¶ 5.8–5.13.) He alleges that he was not told that the plan he purchased posed any IRS risk or was an aggressive tax strategy. (*Id.* ¶ 3.8.)

On October 23, 2008, Defendants filed a Notice of Removal in this Court. (Dkt. No. 1.) In it, Defendants alleged that this Court had subject matter jurisdiction based on diversity of the parties. (*Id.* ¶ 8.) Defendants argued that although, on its face, the Complaint did not appear to satisfy the diversity requirements because, like Plaintiff, some of the Defendants were residents of Washington, the Court could ignore the presence of the non-diverse Defendants based on the doctrine of fraudulent joinder. (*Id.* ¶¶ 8–32.) On November 6, 2008, Plaintiff filed the instant motion to remand, arguing that Plaintiff has asserted legitimate claims against Defendant Albert, a Washington resident, thereby depriving this Court of subject matter jurisdiction. (Dkt. No. 12.) The Court must therefore determine whether jurisdiction exists by resolving the parties' arguments as to fraudulent joinder.

**II.   APPLICABLE STANDARD**

"A civil case commenced in state court may, as a general matter, be removed by the defendant to federal district court, if the case could have been brought there originally." *Gardner v. UICI*, 508 F.3d 559, 561 (9th Cir. 2007) (*quoting Martin v. Franklin Capital Corp.*, 546 U.S. 132, 134 (2005)). One

ORDER – 3

basis for federal court jurisdiction is diversity: "[d]iversity jurisdiction under [28 U.S.C.] § 1332 requires complete diversity of citizenship, each of the plaintiffs must be a citizen of a different state than each of the defendants." *Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, 1095 (9th Cir. 2004). However, where "'[a] plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent' and removal is proper." *Gardner*, 508 F.3d at 561 (*quoting Mercado v. Allstate Ins. Co.*, 340 F.3d 824, 826 (9th Cir. 2003)). "[F]raudulent joinder claims may be resolved by 'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067–68 (9th Cir. 2001) (*quoting Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995)); *see also McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) (stating that the removing defendant is entitled to present facts showing that the joinder is fraudulent); JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 102.21[5][a] (3d ed. 2008) ("The federal court's review for fraud must be based on the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties."). The removing defendant bears the burden of proving that removal is proper. *Nishimoto v. Federman-Bachrach & Assoc.*, 903 F.2d 709, 712 (9th Cir. 1990); MOORE, *supra*, § 102.21[5][a] ("The court must assume all the facts alleged by plaintiff to be true and resolve all uncertainties regarding state substantive law against defendants."). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992); *see also* MOORE, *supra*, § 102.21[5][a] ("Only if it finds that there is no possibility that a valid cause of action has been pleaded against the nondiverse defendant will fraudulent joinder be found to exist.").

**III.     ANALYSIS**

Plaintiff asserts that because he has legitimate claims against Defendant John Albert, a

ORDER – 4

Washington resident, diversity is lacking and the Court must remand the case to state court.[2] (Mot. 1 (Dkt. No. 12).) Defendants contend that Plaintiff has engaged in the fraudulent joinder of Mr. Albert and that his presence as a defendant does not defeat diversity jurisdiction.

The Court must therefore address whether Plaintiff has failed to state a cause of action against Mr. Albert and whether such failure is obvious according to the settled rules of the state of Washington.

**A.    Civil Conspiracy**

Under Washington law:

> To establish a civil conspiracy, a plaintiff must: [P]rove by clear, cogent, and convincing evidence that (1) two or more people combined to accomplish an unlawful purpose or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the conspiracy.

*Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Group, Inc.*, 52 P.3d 30, 35 (Wash. Ct. App. 2002) (*citing All Star Gas, Inc. v. Bechard*, 998 P.2d 367 (Wash. Ct. App. 2000)). Plaintiff argues that Mr. Albert, Bank of America, and possibly others, acted together to generate commissions for themselves through marketing and selling an unlawful § 412(i) plan. (Mot. 9 (Dkt. No. 12).) Plaintiff argues that if he proves that there was a conspiracy to profit through selling illegal § 412(i) plans, then he would be entitled to judgment against all co-conspirators jointly and severally, even if Plaintiff was an agent of Bank of America. (*Id.*)

Defendants argue that Plaintiff's civil conspiracy claim "fails because there is nothing unlawful about the sale of life insurance and annuities, and there is nothing unlawful in establishing a 412(i)

---

[2]The Complaint also names "Jane Doe Albert," a Washington resident, and "Does 1–20," of unspecified citizenship, as defendants. (Compl. (Dkt. No. 1-2 at 2).) "Jane Doe Albert" is the unnamed wife of John Albert; Plaintiff argues that "[a]ll acts performed by Mr. Albert relative to this claim were performed on behalf of his marital community." (*Id.* ¶ 1.3.) The unnamed Doe Defendants "are other Bank of America employees, like Mr. Albert, who participated in the sale of § 412(i) plans to class members other than Mr. Kollar, along with the marital communities of each individual Doe." (*Id.* ¶ 1.4.) "For purposes of removal . . . , the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(a). Accordingly, the presence of "Jane Doe Albert" and "Does 1–20" as defendants in this action does not, by itself, defeat diversity.

ORDER – 5

plan." (Resp. 11 (Dkt. No. 18 at 12)).) The Court finds that whether there was something unlawful about Mr. Albert's sale of life insurance to Plaintiff is not clear at this stage. Defendants also argue that if the claims against Mr. Albert relate to his actions performed in the scope of his duties for a principal, then he cannot be individually liable for conspiring with his principal. Defendants cite California cases in support of this proposition. *See, e.g.*, *Doctors' Co. v. Superior Court,* 775 P.2d 508, 511 (Cal. 1989) (recognizing the rule in California that "[a]gents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage."). However, it is not clear to the Court whether, in selling Plaintiff the life insurance policy, Mr. Albert was acting within the scope of his duties as an agent for The Hartford or whether he was acting within the scope of his duties as an employee of Bank of America, or both. Therefore, there is at least a fact question as to whether Mr. Albert's relationship with Bank of America was such that he could not be held liable as a co-conspirator with that company. Further, even if this rule were the law of Washington, which Defendants have not proven, Plaintiff alleges that Mr. Albert acted for his *individual* advantage by saying that he would collect a substantial commission only in the first year, when really he was collecting roughly $70,000 commissions from Plaintiff's premiums for 2004 and 2005, and smaller continued commissions thereafter.

Additionally, Washington case law is clear that at least in some cases, an agent and a principal may be co-conspirators. In *Newton*, the court held that because an agent and principal were *more than* agent and principal and in fact were co-conspirators, they were jointly and severally liable for damages where they competed for the agent's former employer's clients in violation of a non-compete agreement. 52 P.3d at 35. Defendants argue that critical to the holding in *Newton* was the fact that the agent and principal engaged in the conspiracy before they entered the agent/principal relationship. (Resp. 11 (Dkt. No. 18 at 12).) The court, however, did not explicitly condition the finding of liability on the timing of the alleged conspiracy. Further, Plaintiff alleges that Mr. Albert conspired with others, including Mr.

ORDER – 6

1  McGill, another agent of The Hartford, who was not Mr. Albert's principal and who was not apparently

2  an employee of Bank of America. (Kollar Decl. ¶¶ 4–5 (Dkt. No. 13 at 2).) Accordingly, the Court is not

3  persuaded that it is obvious under Washington law that Plaintiff has not stated a cause of action against

4  Mr. Albert for civil conspiracy.

### B. Constructive Fraud

Although Plaintiff need only assert one legitimate claim against Mr. Albert in order for this Court's jurisdiction to be lacking, and the Court has found that the civil conspiracy claim is legitimate, in an abundance of caution, the Court will address another of Plaintiff's claims against Mr. Albert.

Plaintiff asserts that the conduct of "Defendants," including Mr. Albert, constitutes the tort of constructive fraud. (Compl. ¶ 5.9 (Dkt. No. 1-2 at 10).) The Washington Court of Appeals has explained that:

> Conduct that is not actually fraudulent but has all the actual consequences and legal effects of actual fraud is constructive fraud. Breach of a legal or equitable duty, *irrespective of moral guilt*, is "fraudulent because of its tendency to deceive others or violate confidence." This court has defined constructive fraud as failure to perform an obligation, not by an honest mistake, but by some "interested or sinister motive."

*Green v. McAllister*, 14 P.3d 795, 804 (Wash. Ct. App. 2000) (internal citations omitted). For example, in *Green*, the Washington Court of Appeals explained that disposing of partnership assets in an attempt to divest another partner of his interest in the property was a breach of fiduciary duty that constituted constructive fraud. *Id*. The Washington Supreme Court previously said that untrue statements could amount to constructive fraud, even if they were made in good faith. *Thompson v. Huston*, 135 P.2d 834, 836 (Wash. 1943).

Plaintiff asserts that Mr. Albert:

> solicited [Plaintiff's] establishment of a § 412(i) plan by advising him of an advantageous tax deduction, asserting that he would receive only one commission, and failing to disclose that he would receive multiple commissions constituting the lion's share of [Plaintiff's] initial payments.

(Mot. 10–11 (Dkt. No. 12).) Plaintiff also asserts that Mr. Albert failed to advise him that the plan he

ORDER – 7

purchased posed any IRS risk or was an aggressive tax strategy. (*Id.* ¶ 3.8.) He asserts that Mr. Albert and Mr. McGill advised him that he would achieve a very substantial tax savings and that the 412(i) plan was a "very safe, very legal" way to achieve such savings. (Kollar Decl. ¶ 5 (Dkt. No. 13 at 2).) Plaintiff believed that Mr. Albert was "recommending this plan as an adviser" for Plaintiff's benefit, that Mr. Albert never disclosed that he was an insurance agent, and states that it was because of these representations that he purchased the plan. (*Id.* ¶¶ 7, 13.) On these facts, it is not obvious to the Court that Mr. Albert's alleged misrepresentations do not constitute constructive fraud.

Defendants argue primarily that Mr. Albert cannot be held personally liable because under Washington law, an insurance agent is not individually liable for acts performed within the scope of his agency for a disclosed principal absent a "special relationship" with the insured. *See Suter v. Virgil R. Lee & Son, Inc.*, 754 P.2d 155, 157 (Wash. Ct. App. 1988) ("Ordinarily, 'no affirmative duty to advise is assumed by the mere creation of an agency relationship.' . . . A duty to advise as to the adequacy of insurance may arise, however, when a special relationship exists between agent and buyer."). This "special relationship" arises if:

> an agent holds himself out as an insurance specialist and receives compensation for consultation and advice apart from the premiums paid by the insured. A special relationship may also be shown by a longstanding relationship, some type of interaction on the question of coverage, coupled with the insured's reliance on the expertise of the insurance agent to the insured's detriment.

*Id.* Defendant argues that Plaintiff does not allege any of the facts necessary to prove that a special relationship existed between Mr. Albert and Plaintiff. Plaintiff contends that he can prove that a special relationship existed, under either of the tests articulated in *Suter*.

As a preliminary matter, the Court is not entirely persuaded that Mr. Albert was acting within the scope of his agency for a disclosed principal, since Plaintiff alleges that Mr. Albert never told him that he was an insurance agent. (Kollar Decl. ¶ 13 (Dkt. No. 13 at 3).) Further, even if he was acting within the scope of his agency for a disclosed principal, Plaintiff may be able to prove, at a minimum, the latter test. Plaintiff alleges, and for the purposes of this motion, the Court must accept Plaintiff's facts as true,

ORDER – 8

that Plaintiff had a longstanding relationship with Mr. Albert, who was appointed by Bank of America to be Plaintiff's personal banker and financial adviser. (Kollar Decl. ¶ 3 (Dkt. No. 13 at 1).) According to Plaintiff, Mr. Albert initiated the interaction on the question of coverage—despite the fact that Plaintiff had expressed no interest in life insurance. Mr. Albert came to his home, advised him that purchasing this insurance in the context of a retirement plan was a safe way to achieve tax savings, and Plaintiff relied upon this supposed expertise to his financial and legal detriment. It is therefore not obvious to the Court that Plaintiff fails to state a claim for constructive fraud against Mr. Albert.

Defendants also argue that because Plaintiff allegedly signed disclosure documents that informed him that "[n]either The Hartford, *nor its agents* or employees, provide tax or legal advice[,]" Plaintiff cannot allege any reliance on any purported representations by Mr. Albert concerning tax consequences. (Resp. 8 (Dkt. No. 18 at 9).) Plaintiff argues, however, that the enforceability of these disclaimers depends upon factual issues under Washington law. The Court agrees that whether these disclosures prevent Plaintiff's recovery against Defendant Albert depends upon factual issues that are not appropriate for resolution at this stage. Regardless of whether Plaintiff's claim will withstand summary judgment, it is not obvious under Washington state law that Plaintiff has entirely failed to state a claim for constructive fraud against Mr. Albert. *See Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (explaining that whether defendants can propound defenses to an otherwise valid cause of action is a distinct concept from whether the plaintiff truly has a cause of action).

Plaintiff has therefore asserted at least two legitimate claims against Mr. Albert. Though the Court makes no ruling on the merits of those claims, the Court finds that because there may be facts supporting Plaintiff's claims against Mr. Albert, Plaintiff did not engage in fraudulent joinder of Mr. Albert. As such, diversity jurisdiction is lacking and this Court must remand the case to the state court.

**IV. CONCLUSION**

For the foregoing reasons, the Court hereby GRANTS Plaintiff Allan J. Kollar's Motion to Remand for lack of subject matter jurisdiction (Dkt. No. 12). This case is REMANDED to King County

ORDER – 9

Superior Court for all further proceedings.

DATED this 2nd day of February, 2009.

/s/ John C. Coughenour
John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER – 10